ORAL ARGUMENT NOT YET SCHEDULED
**APPELLATE CASE NO. 24-4027**

# In The United States Court Of Appeals For The Tenth Circuit

--------------------------------- -------------------------------

ALPINE SECURITIES CORPORATION,

*Plaintiff-Appellant*,

v.

NATIONAL SECURITIES CLEARING CORPORATION, THE DEPOSITORY TRUST & CLEARING CORPORATION, and THE DEPOSITORY TRUST COMPANY

*Defendants-Appellees*,

UNITED STATES OF AMERICA,

*Intervenor for Defendant-Appellee*.

-------------------------------------------------------------------
**REPLY MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL**
-------------------------------------------------------------------

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH  2:23-cv-00782 JNP JCB

-------------------------------------------------------------------

| | |
|---|---|
| Aaron D. Lebenta (10180) | Maranda E. Fritz* |
| **CLYDE SNOW & SESSIONS, P.C.** | Maranda E. Fritz PC |
| 201 South Main Street, Suite 2200 | 521 Fifth Avenue 17th Floor |
| Salt Lake City, Utah 84111 | New York, New York 10175 |
| Tel/Fax: 801.322-2516 | Phone: (646) 584-8231 |
| adl@clydesnow.com | maranda@fritzpc.com |
| | (*10th Cir. Application Pending*) |

*Counsel for Plaintiff-Appellant Alpine Securities Corporation*

Plaintiff/Appellant Alpine Securities Corporation ("**Alpine**"), through counsel, submits this Reply Memorandum in Support of its Emergency Motion for an Injunction Pending Appeal and in response to the Opposition Memoranda filed by Defendants/Appellees National Securities Clearing Corporation ("**NSCC**"), Depository Trust Company ("**DTC**") and Depository Trust & Clearing Corporation ("**DTCC**") (collectively, "**Defendants**") and the United States.

## **INTRODUCTION**

Defendants and the United States ask this Court to ignore not only the plain and irreparable injury facing Alpine – being barred from engaging in its business of clearing stocks – but also the Supreme Court's clear statement that "here and now" injury exists from being forced to undergo an unconstitutional proceeding by an illegitimate decision maker. *Axon Enter., Inc. v. FTC,* 598 U.S. 175, 191 (2023). This case presents that injury in the starkest terms: Defendants are moving forward to prevent Alpine from clearing stocks through a proceeding in which their own Board has made the initial determination, their own Board serves as the Hearing Panel, and the decision becomes effective without agency review.

While the injury to Alpine is evident and includes precisely the harm described by the Supreme Court, no prejudice results from a stay while these issues are fully considered. Defendants waited two months to move the proceeding forward, and Alpine has been and is in compliance with even the higher $10

1

million ENC requirement. In decades of operation, Alpine has never failed to meet capital requirements, and Defendants are exposed to no risk from Alpine continuing to clear trades for its customers whose stock is on deposit at DTC.

Just as they are determined to obscure the reality of the relative harms, Defendants and the United States ignore the incontrovertible circumstances that support the conclusion that Defendants' structure and operations violate the Appointments Clause, separation of powers, and the private non-delegation doctrine. Defendants are exercising significant government power by controlling access to U.S. securities markets and in convening and presiding over the cease-to-act ("CTA") proceeding, and therefore must be officers appointed and supervised by the President. In their enforcement and adjudicatory function, Defendants are wielding the same authority, and are subject to the same constitutional infirmities as the SEC's ALJs. *Lucia v. SEC,* 585 U.S. 237 (2018). And, as the D.C. Circuit recognized, FINRA Hearing Officers are performing the same functions, exercising significant government authority by virtue of the SEC's delegation of its powers conferred by Congress. *See Alpine Sec. Corp. v. FINRA,* 2023 WL 4703307 (D.C. Cir., July 5, 2023). With respect to FINRA's nominally private status, the D.C. Circuit asked the proper question: how can FINRA, which acts only on authority delegated by the SEC, engage in conduct that the SEC could not?

*Id.* at *2-4. It then rightly concluded that the delegee cannot do that which could not be done by the delegating agency. *See id.*

Here, too, Congress conferred enormous power on the SEC to regulate the securities markets, including to create a national market system for settling securities transactions. 15 U.S.C. § 78q-1(a). The SEC's delegation of that power to purportedly private entities should not be used as a means to strip away the critical protections and constraints that accompany those powers and prevent governmental overreach and abuse.

Defendants and the United States also ask this Court to endorse a wholly unsupported version of the private nondelegation doctrine. That doctrine, for good reason, prevents the delegation of governmental powers to private entities except when certain requirements are met. One is oversight by the agency. Equally critical is that the private entity must be subordinate to the agency. If a private party can supplant the agency and wield governmental power on its own, then the doctrine is gutted. Defendants and the United States insist that private entities can use governmental powers to deprive individuals of their property and livelihood so long as there is some down-the-line agency review that occurs after it is far too late. No court has so held, and this Court should reject their invitation to eviscerate a critical doctrine that prevents private parties from wielding governmental power without regard for any Constitutional norms.

3

The D.C. Circuit, under similar circumstances, granted an interim stay of a FINRA enforcement proceeding and then ordered full briefing and argument to allow the most comprehensive consideration of these complex and important issues. We ask this Court to do the same.

## ARGUMENT

### I. ALPINE'S MOTION IS NOT PROCEDURALLY DEFECTIVE

In an effort to avoid or limit this Court's review, Defendants claim Alpine's Motion is procedurally defective. In addition to being meritless, Defendants' procedural arguments are immaterial because Defendants cite no authority that the purported procedural defects deprive this Court of the power to grant the relief sought: a stay of the CTA proceeding pending appeal.

*First,* Defendants claim that DTC is not a proper party to this appeal because it was not added until after Alpine filed its motion for a preliminary injunction below. This is immaterial to the relief sought here. DTC became a party to the case prior to the district court ruling at issue, and is also a party to Defendants' Opposition on appeal. (Defendants' Opp., at 1). Moreover, an injunction that stays the CTA proceeding would also preclude DTC from pursuing the proceeding, even if it were not a party, because injunctions also bind those in "active concert or participation" with enjoined parties. Fed. R. Civ. P. 65(d)(2)(C).

*Second,* Defendants claim there is no basis for injunctive relief against DTCC because it is not itself a registered clearing agency or SRO. But, Defendants do not dispute that DTCC wholly owns and operates through NSCC and DTC, and that DTCC's Board, executives and management are also the Board, executives and management of NSCC and DTC. Any distinction is both artificial and meaningless as DTCC is clearly wielding government power unconstitutionally *through* NSCC and DTC. If anything, Defendants' argument that DTCC is not itself an SRO makes its exercise of government power even worse, as DTCC could not even claim to be supervised by the SEC.

*Third,* Defendants claim that the district court correctly concluded it lacked jurisdiction over Alpine's due process claim. However, as Alpine demonstrated in its opening Motion, the district court's analysis disregarded the primary aspect of Alpine's due process claim: that Defendants' Hearing Panel is comprised of members of the Defendants' collective Board, who are not properly appointed – and certainly not impartial – adjudicators. *See, e.g., Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr.*, 508 U.S. 602, 617–18 (1993) ("[D]ue process requires a 'neutral and detached judge in the first instance' and the command is no different when a legislature delegates adjudicative functions to a private party." (citations omitted)). Alpine's due process claim is also intertwined with its other constitutional claims against Defendants that challenge, *inter alia,*

5

Defendants' unconstitutionally appointed and unaccountable Board. As the Supreme Court determined in addressing similar claims in *Axon,* claims that allege constitutional harm from being subjected to "an illegitimate proceeding, led by an illegitimate decision maker" are subject to immediate jurisdiction under 28 U.S.C. § 1331. *See Id.* at 191; *see also id.* at 182, 195-96.

Moreover, everyone agrees the district court had jurisdiction over Alpine other constitutional claims. Thus, regardless of this Courts' jurisdictional ruling on Alpine's due process claim, this Court can enter an injunction pending appeal based on Alpine's other claims.

## II.   ALPINE IS NOT SUBJECT TO HEIGHTENED BURDEN

Defendants attempt to insulate their conduct further from review by arguing that Alpine seeks a "mandatory" injunction and thus must meet a heightened burden. (Defendants Opp., at 10). Defendants are wrong. Alpine commenced this action *before* Defendants commenced the CTA proceeding. Alpine was a member of NSCC and DTC before Alpine filed its Complaint and still has that status now. Alpine seeks an injunction to stay the CTA proceeding to preserve that status quo in order to survive long enough to have its constitutional claims fully heard and addressed on the merits.

### III. ALPINE MEETS THE REQUIREMENTS FOR AN INJUNCTION PENDING APPEAL

#### A. Alpine has Shown a Substantial Likelihood of Success.

##### 1. Defendants Exercise Executive Power When They Create and Enforce Rules that Operate as Law and Control Access to the Securities Markets.

Defendants and the United States claim that Defendants can receive broad delegations of governmental power and, with those powers, engage in state action, but that they are exempt from all of the Constitutional provisions that regulate the exercise of that power. But Governmental power cannot be allowed to seep through the cracks in a manner that permits it to be deployed without adherence even to the guarantee of due process. The SEC could not and did not grant Defendants a power that *the SEC itself does not have*, i.e., the ability to wield government power without abiding by the critical constraints and protections that Congress embedded in the Constitution. *See, e.g., United States v. Ackerman*, 831 F.3d 1292, 1296 (10th Cir. 2016) ("[W]hen an actor is endowed with law enforcement powers beyond those enjoyed by private citizens, courts have traditionally found the exercise of the police power engaged").

Here, the Defendants are wielding governmental power over access to the securities markets. They have received and are aggressively deploying both the ability to promulgate rules that have the status of federal law (and preempt state

law),[1] and the ability to use that power to conduct supposed enforcement proceedings to close a business that has actually complied with their requirements. Defendants are doing so through a process that this Court has likely never seen and that should never be countenanced in a fair legal system: having their own Board determine a rule violation has occurred, seeking the harshest sanction, and then having a proceeding in which their own Board affirms that determination.

Whether the Defendants should also be considered state actors involves an analysis that requires consideration not only of *Lebron* but also a host of other authorities that look to the power being wielded to determine whether it is subject to Constitutional constraints. Defendants and the United States sweep with far too broad a brush, suggesting that all self-regulatory organizations ("SROs") "are 'private' entities not subject to constitutional constraints." (Defendants' Opp., at 13; *see also* United States Opp. at 20-21).

That unsupported position unquestionably creates the "constitutional loophole" that was rejected recently by the D.C. Circuit in *Alpine v. FINRA,* 2023 WL 4703307, *4. And it misstates the law. The analysis requires consideration of the extent and nature of the power wielded and the manner in which it is deployed. *See Blount v. SEC*, 61 F.3d 938, 941 (D.C. Cir. 1995) (regardless of whether MSRB is a "private party", its rule "operates not as a private compact among

---

[1] *Whistler Invs., Inc. v. Depository Trust & Clearing Corp.,* 539 F.3d 1159, 1164 n.º2, 1168 (9th Cir. 2008)

brokers and dealers but as federal law" and is engaged in "government action of the purest sort."); *see also Financial Oversight & Management Bd. For Puerto Rico v. Aurelius,* 140 S.Ct. 1649, 1657 (2020) (Constitution's "structural constraints, designed in part to ensure political accountability, *apply to all exercises of federal power*[.]" (emphasis added)).

This particular case illustrates the dangers inherent in permitting the wielding of governmental powers by nominally private entities that eschew any Constitutional obligations and imposes its will in ways that no jurist would have ever envisioned.

### 2. Alpine Is Likely to Prevail on its Claim that Defendants Violate the Private Nondelegation Doctrine.

Defendants and the United States maintain there is no impropriety arising from the fact that its Board, who are themselves participants in the securities industry, are wielding governmental power over other securities firms. Yet that circumstance was an essential part of the decision in *Carter v. Carter Coal Co.*, 298 U.S. 238 (1936), in which the Supreme Court held that giving regulatory power to "private persons whose interests may be and often are adverse to the interests of others in the same business" was an unconstitutional "legislative delegation" of a "governmental function." *Id.,* at 311-312.

The non-delegation doctrine, if it is to have any meaning, must be interpreted to ensure that the private entity performs a limited and subordinate role.

Contrary to the Defendants' argument, the court in *Oklahoma v. United States,* 62 F.4th 221, 228 (6th Cir. 2023), made clear the limits of a subordinate role: "a private entity may not be the *principal decisionmaker* in the use of federal power, may not create federal law, *may not wield equal power* with a federal agency, or *regulate unilaterally*." *Id.* at 229 (emphasis added). That court explained that a rulemaking process is proper where the agency reviews the rule *before* it becomes effective. *Id.* at 231 (holding that a private entity is subordinate where it "may only 'propose' rules to the Commission" which rules *cannot go into effect* "unless the proposed rule has been approved by the Commission.").

>   The same must be true of adjudicatory decisions:
>
>>  As with rulemaking, so with adjudication: *The Authority's adjudication decisions are not final until the FTC has the opportunity to review them.*

*Id.* (emphasis added). *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869, 873 (5th Cir. 2022) (held that the "Authority's power outstrips any private delegation the Supreme Court or our court has allowed. We must therefore declare HISA facially unconstitutional.").

Defendants employ doublespeak to try to claim that *Oklahoma* does not say what it plainly says: that, to comply with the private nondelegation doctrine, adjudication decisions may not be final – *or effective* – until the agency reviews them. The chance of after-the-fact review does not change that requirement.

>    B.   **The Remaining Equitable Factors Favor a Stay of the CTA Proceeding Pending Resolution of the Appeal.**

Alpine has clearly established the remaining equitable factors. Defendants do not dispute that they seek, through the CTA proceeding, to cease to act for Alpine and terminate its membership in *both* NSCC and DTC. Instead, they argue that Alpine would suffer no harm because it could clear trades indirectly through other members. This argument is meritless. Defendants ignore that Alpine is a *clearing broker;* it generates revenue by clearing trades for its customers. Thus, to continue to operate its actual business, it must be a member of NSCC and DTC.

Moreover, Defendants disregard the constitutional injury that the Supreme Court in *Axon* recognized as establishing irreparable harm: being subjected to an "illegitimate proceeding by an illegitimate decision maker"—"a here-and-now injury" that "cannot be undone." *Axon*, 598 U.S. at 191; *see also Alpine v. FINRA*, 2023 WL 4703307, *2 (finding irreparable harm satisfied on this basis); *cf. also Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (preventing constitutional harms is "always in the public interest"). The possibility of after-the-fact review on appeal to the SEC can neither alleviate the constitutional injury, nor bring back the customers that Alpine will have lost once it can no longer clear their trades. Alpine would be out of business by then.

Conversely, Defendants have failed to show they would suffer any harm from staying the CTA proceeding. Defendants' choice not to use their summary

proceeding, and the long delay between the November 9, 2023 Notice of the CTA proceeding and the scheduling of any hearing alone demonstrates it is not urgent. Nor do Defendants dispute that Alpine has been in compliance with the ENC requirements and Defendants' other rules for months and that Defendants have continued clearing for Alpine without incident.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Alpine's Emergency Motion and stay the CTA proceeding.

Dated this 14th day of March 2024

*/s/ Aaron D. Lebenta*
Aaron D. Lebenta (UT Bar 10180)
CLYDE SNOW & SESSIONS, P.C.
201 South Main Street, Suite 2200
Salt Lake City, Utah 84111
Tel/Fax: 801.322-2516
adl@clydesnow.com


Maranda E. Fritz (*10th Cir. Application Pending*)
MARANDA E. FRITZ, P.C.
521 Fifth Avenue, 17th Floor
New York, New York 10175
Telephone: 646.584.8231
maranda@fritzpc.com

*Attorneys for Appellant*

**CERTIFICATE OF WORD COUNT AND TYPEFACE COMPLIANCE**

This document complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(C) because this document contains 2,582 words, excluding parts exempted by Fed. R. App. P. 32(f) and 10th Cir. Rule 32.

This document complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(A)(5) and 32(A)(6) and 10th Cir. Rule 32(A) because it has been prepared in a proportionately spaced typeface using Microsoft Word of Office 365 in 14-point Times New Roman Font.

Dated this 14th day of March 2024:

*/s/ Aaron D. Lebenta*
Aaron D. Lebenta
*Counsel for Appellant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of March 2024, I caused the foregoing Reply Memorandum in Support of Appellant's Emergency Motion to Stay to be filed and served electronically on all parties through known counsel of record, using the appellate CM/ECF system.

                                                */s/ Aaron D. Lebenta*
                                                Aaron D. Lebenta
                                                *Counsel for Appellant*